1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICKY PARNELL,                          No.  2:18-cv-0220 WBS KJN P

12                  Plaintiff,               ORDER AND

13          v.                               FINDINGS AND RECOMMENDATIONS

14   DR. WIN, et al.,

15                  Defendants.

16

17   I.  Introduction

18          Plaintiff is a state prisoner, proceeding pro se and in forma pauperis, in this civil rights

19   action filed pursuant to 42 U.S.C. § 1983.  In his complaint, plaintiff alleges that defendants Dr.

20   Win and Dr. Chen were deliberately indifferent to plaintiff's serious medical needs in violation of

21   the Eighth Amendment.  Pending before the court is defendants' motion for summary judgment.

22   As discussed below, the undersigned recommends that the motion be granted.

23   II.  Allegations/Complaint

24          Plaintiff alleges Drs. Win and Chen were deliberately indifferent to his medical need for a

25   lower tier/lower bunk assignment, and that as a result, he suffered unnecessarily in violation of

26   his Eighth Amendment right to be free of cruel and unusual punishment.  He seeks injunctive

27   relief against retaliation, general and compensatory damages, as well as punitive damage awards.

28   (ECF No. 1.)

                                           1

III.  <u>Undisputed Facts</u>[1] ("UDF")

1.  Plaintiff Ricky Parnell is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") who was incarcerated at California State Prison in Solano, California at all times relevant to this lawsuit.  (ECF No. 1 at 1.)

2.  Plaintiff was born in 1958 and has a medical history of knee pain.  Plaintiff also underwent surgery for a left shoulder tear on September 14, 2011.  (UDF 1.)

3.  In 2015, the CDCR and California Correctional Health Care Services (CCHCS) developed an electronic form and updated clinical criteria for lower tier/bunk chronos.  (UDF 2.)

4.  Physicians enter the inmate-patient's medical condition(s) into an electronic form and a chrono is automatically generated based on predetermined clinical criteria.  Physicians use their medical training and experience in diagnosing and assessing an inmate-patient's medical condition(s).  (UDF 3.)

5.  On June 15, 2015, plaintiff's lower tier/bunk chrono was rescinded because he did not meet updated clinical criteria.  (UDF 4.)

6.  Plaintiff remained in a lower tier/bunk following the loss of his lower tier/bunk chrono on June 15, 2015.  (UDF 5.)

7.  With respect to the clinical criteria for a lower bunk chrono, plaintiff did not have any of the following:  a history of seizure; recent abdominal, chest, or back surgery; a severe orthopedic condition; acute fractures of the long bones and/or torso; a severe mobility restriction requiring the use of an assistive device; severe vision impairment; dementia; a mobility or health concern with substantially limited walking; osteoporosis with a history of two long bone fractures; a disorder or treatment affecting equilibrium; ataxia, neurological impairment, or Parkinson's; amputation or severe weakness of an upper or lower extremity; a serious heart condition/COPD; a severe mobility restriction requiring intermittent wheelchair use; a severe

---

[1]  For purposes of summary judgment, the undersigned finds these facts are undisputed following review of ECF document numbers 28-2, 29, 30-1 and 30-2 and documents referenced therein. Where plaintiff has failed to properly address defendants' assertion of fact as required, the undersigned considers the fact undisputed.  <u>See</u> Fed. R. Civ. Pro. 56(e)(2).

mobility restriction requiring a fulltime wheelchair; or a severe orthopedic condition of the hips, knees, ankles, feet, or an upper extremity.  (UDF 6.)

8.  On June 15, 2015, plaintiff did not meet the clinical criteria for a lower bunk, and in Dr. Win's opinion, did not have a medical need for a lower bunk placement at that time.  (UDF 7.)

9.  On June 15, 2015, with respect to the clinical criteria for a lower tier chrono, plaintiff was not a wheelchair or walker user, did not have a severe mobility restriction, or a mobility or health concern which substantially limited walking.  (UDF 8.)

10.  On June 15, 2015, plaintiff did not meet the clinical criteria for a lower tier, and in Dr. Win's opinion, did not have a medical need for a lower tier placement at that time.  (UDF 9.)

11.  At his deposition on February 11, 2019, plaintiff conceded that he did not meet CCHCS' clinical criteria for a lower tier/bunk chrono.  (UDF 10.)

12.  On August 26, 2015, plaintiff briefly transferred to North Kern State Prison (NKSP) and returned to Solano on September 3, 2015.  (UDF 11.)

13.  Upon plaintiff's return to Solano, he was housed in an upper tier and lower bunk. (UDF 12.)

14.  Dr. Win saw plaintiff on September 14, 2015.  (UDF 13.)

15.  Plaintiff had developed a right limp following his recent transfer.  (UDF 14.)

16.  On September 14, 2015, Dr. Win examined plaintiff's right knee and it had normal range of motion.  (UDF 15.)

17.  On September 14, 2015, Dr. Win continued plaintiff on a knee wrap, submitted a physician's request for services for physical therapy to address plaintiff's limp, and reissued plaintiff's unrestricted housing chrono because he did not meet clinical criteria for a lower tier/bunk at that time.  (UDF 16.)

18.  On September 24, 2015, plaintiff was moved to the upper bunk of his upper tier cell. (UDF 17.)

19.  On October 29, 2015, medical received a 7362 from plaintiff complaining of shoulder and knee pain, and expressing concern about the loss of his lower tier/bunk chrono.  (UDF 18.)

20.  Plaintiff was seen by a non-party registered nurse (RN) on October 30, 2015, and scheduled for a follow-up with Dr. Win.  (UDF 19.)

21.  On October 30, 2015, plaintiff told the RN that moving up and down the stairs and on and off the top bunk was causing him shoulder and knee pain.  (UDF 20.)

22.  On October 30, 2015, plaintiff was examined by the RN and his shoulder had no swelling/redness and a normal range of motion.  (UDF 21.)

23.  On October 30, 2015, plaintiff's right knee was in a brace and was slightly tender, but plaintiff was ambulatory.  (UDF 22.)

24.  On November 4, 2015, Dr. Win ordered plaintiff a new XL neoprene knee brace for his right knee.  (UDF 23.)

25.  On November 16, 2015, medical received a 7362 from plaintiff.  He explained that his knee was getting worse despite completing physical therapy.  Plaintiff inquired about possible knee surgery and requested a lower bunk.  (UDF 24.)

26.  Plaintiff was seen by a non-party RN on November 17, 2015.  A medical doctor referral was not completed because plaintiff was already scheduled for an appointment.  (UDF 25.)

27.  On November 24, 2015, plaintiff submitted a reasonable modification or accommodation request, requesting a lower tier/bunk chrono.  (UDF 26.)

28.  On December 4, 2015, plaintiff was moved to a lower bunk in an upper tier cell.  (UDF 27.)

29.  Dr. Win saw plaintiff on December 11, 2015.  Plaintiff had completed his physical therapy and walked into the clinic with a normal gait.  (UDF 28.)

30.  On December 11, 2015, plaintiff complained of knee pain and was provided Tylenol #3 by Dr. Win.  (UDF 29.)

31.  On December 11, 2015, Dr. Win also ordered x-rays of plaintiff's knee, which were completed on December 17, 2015.  Plaintiff's knee was unchanged since his last examination, showing only mild osteoarthritic changes.  (UDF 30.)

32.  Mild osteoarthritic changes in the knee did not meet the clinical criteria for a lower

4

tier/bunk and, in Dr. Win's medical opinion, were perfectly normal in someone of plaintiff's age and did not provide a medical basis for a lower tier/bunk chrono. (UDF 31.)

33. On December 31, 2015, the Reasonable Accommodation Panel denied plaintiff's request for a lower tier/bunk chrono based on findings from Dr. Win's December 11, 2015 examination. (UDF 32.)

34. Dr. Win saw plaintiff again on January 5, 2016, for a follow-up regarding complaints of right knee pain. (UDF 33.)

35. During the January 5, 2016, encounter, plaintiff complained to Dr. Win about left knee pain. The doctor examined plaintiff; plaintiff had a normal gait and no difficulty getting up from the seated position. (UDF 34.)

36. During the January 5, 2016, encounter, plaintiff requested another knee brace for his left knee. Dr. Win ordered the requested brace. (UDF 35.)

37. On January 18, 2016, plaintiff reported that around 9:00 a.m. he slipped on a wet floor and landed on his buttocks. (UDF 36.)

38. Plaintiff complained of knee pain and lower back pain following the unwitnessed fall. (UDF 37.)

39. Plaintiff was seen by non-party medical providers and given Tramadol after the fall. (UDF 38.)

40. On January 19, 2016, plaintiff was seen for a follow-up by a non-party RN and was provided Tylenol #3. (UDF 39.)

41. Dr. Win saw plaintiff on January 27, 2016. The doctor examined plaintiff and Tylenol #3 continued to be provided. (UDF 40-41.)

42. On January 27, 2016, Dr. Win ordered x-rays of plaintiff's lumbar spine; the results showed mild degenerative changes. (UDF 42.)

43. Mild degenerative changes in the lumbar spine do not meet the clinical criteria for a lower tier/bunk; in Dr. Win's medical opinion, the changes were consistent with plaintiff's age and did not provide a medical basis for a lower tier/bunk chrono. (UDF 43.)

44. Dr. Win saw plaintiff on February 25, 2016. (UDF 44.)

45. On February 25, 2016, plaintiff complained of increased left shoulder pain; examination results were normal. (UDF 45.)

46. On February 25, 2016, Dr. Win recommended that plaintiff continue isometric exercise (a type of strength training). (UDF 46.)

47. On February 25, 2016, Dr. Win was considering physical therapy and corticosteroid injection for plaintiff if other options failed. (UDF 47.)

48. Dr. Win ordered an x-ray of plaintiff's left shoulder which was completed on March 1, 2016. The x-ray revealed signs of arthritis but no acute abnormality. (UDF 48.)

49. A sign or signs of arthritis do not meet the clinical criteria for a lower tier/bunk; in Dr. Win's medical opinion, those signs were consistent with aging and did not provide a medical basis for a lower tier/bunk chrono. (UDF 49.)

50. Dr. Win saw plaintiff on April 14, 2016. Following examination, Dr. Win concluded plaintiff did not meet the clinical criteria for a lower tier/bunk assignment at that time. (UDF 50.)

51. On April 14, 2016, in Dr. Win's medical opinion, plaintiff did not have a medical need for a lower tier/bunk assignment. (UDF 51.)

52. On that same date, Dr. Win submitted a request for physical therapy. (UDF 52.)

53. On April 20, 2016, plaintiff reported an unwitnessed fall down the stairs. He complained of neck pain and pain to the left side of his head, and wanted to see a specialist for chronic pain. (UDG 53.)

54. Dr. Chen examined plaintiff on April 20, 2016, in the Treatment and Triage Area (TTA). (UDF 54.)

55. On April 20, 2016, Dr. Chen did not cancel a code 3 medical response, has no knowledge of a code 3 being called, and does not believe that code 3 was ever called with respect to plaintiff. (UDF 55.)

56. During examination of April 20, 2016, plaintiff showed no signs of trauma while in the TTA, had a full range of motion and normal examination. As a result, there was no indication plaintiff needed to see a specialist. X-rays of plaintiff's cervical spine were ordered by Dr. Chen, and plaintiff was provided with ice and Tramadol. (UDF 56.)

57. On April 20, 2016, x-rays revealed moderate degenerative changes to plaintiff's c-spine at C5-6 and C6-7. There was no evidence of a fracture of dislocation, or any sign of an acute injury. (UDF 57.)

58. Moderate degenerative changes to the c-spine are not unusual in someone of plaintiff's age, and are common and consistent with aging. (UDF 58.)

59. On April 20, 2016, plaintiff continued to complain of pain, but refused additional medication. (UDF 59.)

60. On that same date, plaintiff returned to his building, but stated he was unable to go upstairs or get into an upper bunk. (UDF 60.)

61. When Dr. Chen was contacted on April 20, 2016, regarding plaintiff's above allegation, he deferred to Dr. Win because Dr. Win was plaintiff's primary care provider and the TTA does not generally issues chronos. (UDF 61.)

62. On April 20, 2016, Dr. Win issued plaintiff a temporary chrono for a lower tier/bunk placement until further testing could be completed. (UDF 62.)

63. In compliance with Dr. Win's orders, plaintiff was moved to a lower tier the same day as his reported fall; plaintiff had already been moved to a lower bunk and that placement continued with the tier change. (UDF 63.)

64. On April 26, 2016, Dr. Win extended plaintiff's lower tier/bunk chrono, issued an order for a walker (one was already provided, possibly by TTA), and ordered x-rays of plaintiff's lumbar spine. (UDF 64.)

65. The x-rays of the same date revealed no significant issues. (UDF 65.)

66. On May 3, 2016, Dr. Win again extended plaintiff's lower tier/bunk chrono placement. (UDF 66.)

67. On May 6, 2016, Dr. Win ordered x-rays of plaintiff's right hip; it showed mild degenerative changes consistent with aging. (UDF 67.)

68. On May 26, 2016, Dr. Win's extended plaintiff's lower tier/bunk chrono for a third time. (UDF 68.)

69. On May 31, 2016, Dr. Win ordered x-rays of plaintiff's cervical and lumbar spine;

moderate degenerative changes to plaintiff's cervical spine at C5-6 and C6-7, and moderate

degenerative changes to the lumbar spine at L4-5, were noted.  (UDF 69.)

70.  Moderate degenerative changes to the cervical spine at C5-6 and C6-7, and to the

lumbar spine at L4-5, are common and consistent with aging.  (UDF 70.)

71.  On October 10, 2016, Dr. Win ordered an MRI of plaintiff's left shoulder; it revealed

severe degenerative changes.  (UDF 71.)

72.  Dr. Win saw plaintiff on November 28, 2016, to discuss the findings from the MRI.

(UDF 72.)

73.  At that time, plaintiff was relying on a walker for his right knee and insisted that he

still needed it.  (UDF 73.)

74.  Based on plaintiff's shoulder MRI and his reliance on a walker, Dr. Win issued a

permanent lower tier/bunk chrono on November 28, 2016 (plaintiff had remained on a lower bunk

since December 4, 2015, and a lower tier since April 20, 2016).  (UDF 74.)

IV.  Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in

Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

---

[2]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
standard for granting summary judgment remains unchanged."

Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

9

1  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
2  amendments).

3        In resolving a summary judgment motion, the court examines the pleadings, depositions,
4  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.
5  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See</u> <u>Anderson</u>, 477 U.S. at
6  255.  All reasonable inferences that may be drawn from the facts placed before the court must be
7  drawn in favor of the opposing party.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.  Nevertheless, inferences
8  are not drawn out of the air, and it is the opposing party's obligation to produce a factual
9  predicate from which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F.
10  Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to
11  demonstrate a genuine issue, the opposing party "must do more than simply show that there is
12  some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not
13  lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"
14  <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

15        By notice filed May 17, 2019 (ECF No. 28-3), plaintiff was advised of the requirements
16  for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  <u>See</u>
17  <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); <u>Klingele v. Eikenberry</u>, 849 F.2d
18  409 (9th Cir. 1988).

19  V.  <u>Preliminary Matters</u>

20        Plaintiff filed supplemental summary judgment related pleadings despite the
21  undersigned's order of September 25, 2019, prohibiting further filings.  More particularly, on
22  August 5, 2019, when defendants moved to strike plaintiff's July 29, 2019, sur-reply, the
23  undersigned did not find striking the sur-reply to be appropriate, but also stated that "[o]nce
24  defendants' response is filed, the motion for summary judgment will stand submitted, and no
25  additional filings are permitted."  (ECF No. 33 at 2:11-13.)  The undersigned therefore expressly
26  ordered that once defendants had filed their own reply to plaintiff's sur-reply, "no further briefing
27  on the pending motion for summary judgment" was allowed.  (ECF No. 33 at 2:18-19.)
28  ////

1    Despite that order, on October 28, 2019, plaintiff filed a pleading entitled, "Plaintiffs

2    Emergency Motion to Appoint Counsel and Supporting Declaration of Plaintiff re [Notice of

3    Preparer in aid of belated motion]."  (ECF No. 35.)  Plaintiff also filed a pleading entitled

4    "Plaintiff's Ex Parte Request for Judicial Notice [Fed. R. Evidence §201]" on November 1, 2019.

5    (ECF No. 36.) [3]

6        As to the former, plaintiff's pleading, styled as a motion to appoint counsel, contains

7    allegations and assertions of fact that are to be determined in the instant motion for summary

8    judgment and amount to further argument by plaintiff.

9        Plaintiff's latter filing of November 1, 2019, is a request to take judicial notice.[4]  The

10   undersigned notes the appended "Health Care Grievance CDCR 602 HC (Rev. 10/18)" and

11   "Inmate/Parolee Appeal CDCR 602 HC (Rev. 3/12)" forms are offered by plaintiff as "material

12   evidence indicating the referenced separation of the departmental custody division and the

13   medical division along with corresponding development of SOMS (Strategic Offender

14   Management System) and Health Care Delivery System (HCDS) computerized information

15   systems which monitor and track custody related and medical related California Department of

16   Corrections and Rehabilitation inmate files."  (ECF No. 36 at 1.)

17       The previous order was clear and unambiguous:  the matter was to stand submitted after

18   defendants were provided an opportunity to respond to plaintiff's "untimely and unauthorized

19   sur-reply."  The undersigned views plaintiff's repeated filings with disfavor.  Local Rule 230(l)

20   provides as follows:

21           **Motions in Prisoner Actions**.  All motions, except motions to
             dismiss for lack of prosecution, filed in actions wherein one party is
22

23   [3] ECF No. 38, filed by plaintiff on November 6, 2019, appears to be a duplicate of ECF No. 36.

24   [4] A court may take judicial notice of adjudicative facts at the summary judgment stage.  See
     Fed.R.Evid. 201; Grason Elec. Co. v. Sacramento Municipal Utility Dist., 571 F. Supp. 1504,
25   1521 (E.D. Cal. 1983).  Federal Rule of Evidence 201 provides that a trial court may take judicial
     notice of an "adjudicative fact," provided that the "judicially noticed fact [is] not subject to
26   reasonable dispute in that it is ... generally known within the territorial jurisdiction of the court"
     or "can be accurately and readily determined from sources whose accuracy cannot reasonably be
27   questioned."

28

                                               11

incarcerated and proceeding in propria persona, shall be submitted upon the record without oral argument unless otherwise ordered by the Court. Such motions need not be noticed on the motion calendar. Opposition, if any, to the granting of the motion shall be served and filed by the responding party not more than twenty-one (21) days after the date of service of the motion. A responding party who has no opposition to the granting of the motion shall serve and file a statement to that effect, specifically designating the motion in question. Failure of the responding party to file an opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion and may result in the imposition of sanctions. The moving party may, not more than seven (7) days after the opposition has been filed in CM/ECF, serve and file a reply to the opposition. *All such motions will be deemed submitted when the time to reply has expired*.

(Italics added.)  Plaintiff was previously afforded an opportunity to file a sur-reply despite their general disfavor.  (See ECF No. 33.)  Plaintiff will not be afforded further opportunities to circumvent the court's processes with continued untimely filings; the matter stood submitted for consideration as of October 8, 2019.[5]  Thus, plaintiff's pleadings filed on October 28, November 1 and November 6 (apparent duplicate), 2019, were not considered by the undersigned for purposes of these findings and recommendations as the matter stood submitted prior to those dates.

Moreover, plaintiff is not entitled to appointment of counsel.  District courts lack authority to require counsel to represent indigent prisoners in section 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court may request an attorney to voluntarily represent such a plaintiff.  See 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  When determining whether "exceptional circumstances" exist, the court must consider plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved.  Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel).  The burden of demonstrating exceptional circumstances is on the

---

[5] The undersigned notes too that plaintiff previously filed a reply in response to defendants' answer to his complaint, contrary to the Federal Rules of Civil Procedure and without the court's permission.  (ECF No. 26.)  The undersigned ordered plaintiff's filing be disregarded as a result. (ECF No. 27.)

plaintiff.  Id.  Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel.  Having considered the factors under Palmer, the court finds that plaintiff has failed to meet his burden of demonstrating exceptional circumstances warranting the appointment of counsel herein.

VI.  Legal Standard for Eighth Amendment Claim

The Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  To state a claim a plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett, 439 F.3d at 1096).  "Deliberate indifference is a high legal standard," Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted).

"Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

Further, "[a] difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not amount to deliberate indifference."  Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)).  Rather, a plaintiff is required to show that the course of treatment selected was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health."  Snow, 681 F.3d at 988 (quoting

13

1  <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996)).  In other words, so long as a defendant

2  decides on a medically acceptable course of treatment, his actions will not be considered

3  deliberately indifferent even if an alternative course of treatment was available.  <u>Id.</u>

4  VII.  <u>Discussion</u>

5          Here, defendants have moved for summary judgment (ECF No. 28) and have met their

6  initial burden to show no genuine dispute as to any material fact exists.  <u>See</u> <u>Celotex Corp.</u>, 477

7  U.S. at 323.  Hence, the burden shifted to plaintiff to establish that a genuine issue of material fact

8  actually exists.  <u>See</u> <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586.  Plaintiff has not met his burden

9  for he has not tendered evidence in the form of affidavits or other admissible discovery material

10  to support his contention that Drs. Win and Chen acted with deliberate indifference in denying his

11  request for accommodation in the form of a lower tier/lower bunk assignment.

12          Plaintiff's claim arises out of his disagreement with defendant Dr. Win's rescission of a

13  previously issued lower tier/lower bunk chrono where plaintiff alleges Dr. Win knew or should

14  have known that rescission would exacerbate his then existing shoulder, knee and back issues.

15  Plaintiff maintains that Dr. Win's rescission of the lower tier/lower bunk chrono amounts to

16  deliberate indifference of his medical needs because such accommodations had been previously

17  issued.  Plaintiff further contends he meets the criteria established for issuance of a lower

18  tier/lower bunk chrono due to severe orthopedic issues limiting mobility.  In part, plaintiff

19  contends Dr. Win was deliberately indifferent to plaintiff's medical need because Dr. Win

20  ignored his own oath as a physician when he succumbed to some institutional or administrative

21  "stress" related to lessening the inmate population found to be entitled to lower tier/lower bunk

22  assignments and resulting in the rescission of plaintiff's own lower tier/lower bunk status.

23                      *Relevant Factual Background*

24          On June 15, 2015, Dr. Win rescinded a previously issued lower tier/lower bunk chrono

25  because plaintiff did not meet the requirements for issuance of such an assignment.  (UDF 4.)

26  The CDCR had recently updated the criteria related to issuing a lower tier/lower bunk chrono and

27  implemented an electronic system used by staff physicians for making such a determination.

28  (UDF 2-3.)  As of February 2015, the requirements for obtaining a medically necessary lower

tier/lower bunk assignment included the following: a history of seizures; recent abdominal, chest, or back surgery; a severe orthopedic condition; acute fractures of the long bones and/or torso; a severe mobility restriction requiring the use of an assistive device; severe vision impairment; dementia; a mobility or health concern with substantially limited walking; osteoporosis with a history of two long bone fractures; a disorder or treatment affecting equilibrium; ataxia, neurological impairment, or Parkinson's; amputation or severe weakness of an upper or lower extremity; a serious heart condition/COPD; a severe mobility restriction requiring intermittent wheelchair use; a severe mobility restriction requiring a fulltime wheelchair; or a severe orthopedic condition of the hips, knees, ankles, feet, or upper extremity. (UDF 6.)

As relevant here, despite a medical history of knee pain and surgical intervention to treat a left shoulder tear (UDF 1), plaintiff's medical record does not indicate he had a severe orthopedic condition, a severe mobility restriction requiring the use of an assistive device, a severe mobility restriction requiring intermittent use of a wheelchair, or a severe orthopedic condition of the hips, knees, ankles, feet or an upper extremity on June 15, 2015. (UDF 8-9; see also UDF 10.) As a result, Dr. Win determined that plaintiff was not entitled to a lower tier/lower bunk assignment. (UDF 7.) That determination remained the case until April 20, 2016, when plaintiff was issued a temporary lower tier/lower bunk chrono that ultimately became permanent on November 28, 2016. (UDF 62, 64, 66, 68, 74.)

More particularly, between September 2015 and April 20, 2016, physical examination and testing revealed either mild or moderate findings concerning plaintiff's physical complaints relevant to the applicable criteria. (UDF 13, 15, 16, 21- 22, 28, 30-31, 34, 42-43, 45, 48-51, 56-57.) Between April 26, 2016, and until an MRI performed in mid-October 2016, further examination and testing continued to reveal mild or moderate findings relevant to the applicable criteria. (UDF 65, 67, 69.) An MRI ordered on October 10, 2016, revealed severe degenerative changes to plaintiff's left shoulder. (UDF 71.)

Dr. Win met with plaintiff on November 28, 2016, to discuss the left shoulder MRI; the record reveals plaintiff was using a walker for his right knee. (UDF 73-73.) On that same date, given the recent MRI findings and plaintiff's reliance on the walker, Dr. Win issued a permanent

lower tier/lower bunk chrono.  (UDF 74.)

*Analysis*

As to plaintiff's contention that Dr. Win knew or should have known that by rescinding plaintiff's lower tier/lower bunk chrono plaintiff's shoulder, knee and back issues would be exacerbated, plaintiff offers no evidence, other than his own statements, to support his claim. Even where plaintiff's physical complaints involve degenerative processes, the fact a degenerative condition does not improve over time and may worsen as time marches on does not mean Dr. Win knew or should have known rescinding the previous chrono would be detrimental.

The degenerative changes affecting plaintiff's body were those typically associated with an individual of plaintiff's age.  (UDF 30-31 [mild: knee], 42-43 [mild: lumbar spine], 48-49 [signs of arthritis: shoulder], 57-58 [moderate: cervical spine], 67 [mild: hip], 69-70 [moderate: lumbar & cervical spine].)  There is no evidence to indicate that the degenerative changes plaintiff experienced worsened because Dr. Win rescinded a previously issued lower tier/lower bunk chrono.  Any degenerative changes could have occurred during the same time period absent any rescission; such is the nature of degeneration.  Plaintiff has not presented any evidence in the form of affidavits or other admissible discovery material to support his claim that by rescinding the previously issued chrono, Dr. Win's act caused plaintiff's existing age-related physical complaints to worsen, amounting to deliberate indifference.  Matsushita, 475 U.S. at 586, n.11; Richards, 602 F. Supp. at 1244-45.

The condition that ultimately led to Dr. Win's November 2016 issuance of a lower tier/lower bunk chrono following the June 2015 rescission was plaintiff's shoulder.  An MRI completed in October 2016 showed severe degenerative changes.  (UDF 71.)  But the previous examination of plaintiff's shoulder following his complaint of pain was normal:  no swelling or redness was present, and range of motion was normal.  (UDF 21.)  Plaintiff's primary complaints between that examination and the MRI related to his knee or knees, and after a fall in April 2016, complaints about neck and head pain.  Those examinations and diagnostic studies were normal and/or revealed mild to moderate findings.  Notably, while plaintiff was relying on a walker provided after his April 2016 fall, neither examination nor diagnostic studies show it was

necessary for a serious condition. Rather, plaintiff's insistence that the walker remained

necessary, coupled with the objective MRI results, prodded Dr. Win to action on November 28,

2016. (UDF 74.)

Further, even if plaintiff could demonstrate injury as the result of a causal connection

between the worsening of his physical complaints at issue and the denial of his requests for a

lower tier/lower bunk assignment during the relevant time period, such a claim, at most, would

state a claim for negligence. See Estelle v. Gamble, 429 U.S. at 105-06 (a complaint "that a

physician has been negligent in diagnosing or treating a medical condition does not state a valid

claim of medical mistreatment under the Eighth Amendment").

Concerning plaintiff's argument that Dr. Win was deliberately indifferent to his medical

needs because plaintiff had obtained a lower tier/lower bunk chrono prior to the change in criteria

adopted and implemented by CDCR, again, plaintiff's opposition to defendants' summary

judgment suffers from a lack of evidence. In 2015, CDCR implemented new criteria for

determining whether an inmate was entitled to an accommodation of the type at issue here. (UDF

2, 6.) The criteria are specific as to lower tier ("ground floor-no stairs" & "ground floor-limited

stairs") and lower bunk ("bottom bunk") accommodation indicators. (See ECF No. 28-4 at 74,

77-78.) Dr. Win's review of plaintiff's medical record in 2015 led to the rescission of lower

tier/lower bunk status because plaintiff no longer met the updated criteria for such an

accommodation. (UDF 7-9.) Plaintiff has offered no evidence in opposition to challenge the

applicable clinical criteria as unacceptable under the circumstances. Snow, 681 F.3d at 988

(plaintiff required to show that selected course of treatment was "medically unacceptable").

Notably too, during his deposition in February of this year, plaintiff agreed he did not

meet the various criteria read to him. (UDF 10; Parnell Depo at 14:22-15:7 & 18:1-21:25.)

Plaintiff further agreed that prior to October 2016, x-ray and MRI findings revealed mild or

moderate (not severe) changes to his physical condition. (Parnell Depo at 24:16-20, 27:17-22,

30:22-25.)

Neither has plaintiff offered any acceptable evidence to indicate that a change to criteria

used to make an accommodation determination, resulting in rescission of a previous lower

tier/lower bunk accommodation, amounts to a course chosen "in conscious disregard of an excessive risk to plaintiff's health." Snow, 681 F.3d at 988.

Next, any argument by plaintiff that he qualified for lower tier/lower bunk status, employing the revised 2015 criteria, suffers a similar lack of evidentiary support. In opposition to defendants' motion, plaintiff asserts he "requires relatively level terrain/path of travel accommodation to ambulate due to health concerns which severely limit walking" and a "severe orthopedic condition of [the] hips, knees, ankles, feet, or upper extremity." (ECF No. 29 at 8.) The undersigned has previously addressed the facts surrounding plaintiff's orthopedic issues and determined, based upon the evidence, that the conditions were mild to moderate rather than severe during the relevant time period. During that same period, there is no evidence to indicate plaintiff suffered from health concerns that severely limited his walking. (UMF 15-16, 21-23, 28-30, 33-35, 38-42, 44-45, 48, 56-57, 65, 67, 69.) The undersigned again notes that during his deposition in February, plaintiff acknowledged he did not meet the criteria that comports with an accommodation for a lower tier at the time of his move as a result of the unrestricted chrono. (Parnell Depo at 14:22-15:7.) Plaintiff also acknowledged he did not meet the requirements for a lower bunk accommodation at the time of his move. (Parnell Depo at 18:18-21:25.) Plaintiff admitted that Dr. Win, as his treating physician, was familiar with plaintiff's medical condition at the time of the rescission. (Parnell Depo at 11:10-12 & 15:20.)

To the degree plaintiff is arguing that prior physician determinations regarding accommodations prevail over Dr. Win's determination in June 2015 that plaintiff was not so entitled, that argument is nothing more than a difference of opinion between medical professionals not amounting to deliberate indifference. Snow, 681 F.3d at 987 (citing Sanchez, 891 F.2d at 242). And while plaintiff can provide testimony as to the pain he suffers, he cannot provide a medical diagnosis of his problems. An opinion regarding any aspect of plaintiff's medical condition and/or care is beyond that of a lay witness and requires opinion by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

Plaintiff has provided no medical opinion demonstrating that his serious medical condition

18

required a lower tier/lower bunk chrono between the rescission of that previous accommodation on June 15, 2015 and late November 2016 when Dr. Win issued such accommodation. Plaintiff's own declaration cannot rebut the declaration of Dr. Win because plaintiff is a layperson not qualified to offer medical opinions. Without evidence, plaintiff's belief that his condition required a lower tier/lower bunk chrono is simply a difference of opinion with medical treatment, which does not give rise to an Eighth Amendment violation. Moreover, the fact that different doctors at different institutions provided temporary and/or permanent lower tier/lower bunk chronos does not evidence deliberate indifference by Dr. Win because a mere difference of opinion among medical professionals does not rise to a constitutional violation. Snow, 681 F.3d at 987; Wilhelm, 680 F.3d at 1122; Sanchez, 891 F.2d at 242.

Finally, with regard to plaintiff's obligation to tender evidence in support of his claim pertaining to any institutional or administrative "stress" that purportedly caused Dr. Win to refuse to issue a lower tier/lower bunk assignment, plaintiff has completely failed in this regard. Celotex Corp., 477 U.S. at 323. More particularly, as to this specific fact alleged, plaintiff has failed to tender any evidence in the form of affidavits and/or other admissible discovery materials in support of his contention that a dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11. As a result, plaintiff has not shown, as nonmoving party, that a factual dispute exists that would require a judge or jury to resolve.

For example, plaintiff asserted in his document entitled "Statement of Undisputed Material Facts" (ECF No. 29) a number of "undisputed" facts, citing his complaint as supporting evidence. (See, e.g., ECF No. 29 at ¶¶ 3, 4 & 6.) But plaintiff may not simply rely upon the allegations in his pleading; he is required to tender evidence of specific facts by way of affidavits or other admissible discovery material. Matsushita, 475 U.S. at 586 n.11.

Further, plaintiff relies in part on his own testimony during a deposition given February 11, 2019, to support his "undisputed" fact in paragraph 13: "Dr. Win, on 9/14/2015 prior to 9/24/2015 physical examination 10-days previous enters electronic removal of low-bunk/lower-tier chrono based on 'new' procedure & policies. In Depo Plaintiff provided Dr. Win advises new e-system created to 'weed out' permanent chronos." Specifically, plaintiff cited page 15,

lines 16 through 25 of his deposition in support. (ECF No. 29 at 3.) Nevertheless, plaintiff's deposition testimony does not support his stated "undisputed" fact.

The subject arose three times during plaintiff's deposition:

> Q. Did Dr. Win talk to you in June of 2015 about why he had taken those chronos away?
>
> A. He stated to me that the administration is going through a siege of - - to weed out those undeserving inmates that do not deserve lower bunk, lower tier. I expressed to him that he's my doctor; he's very well-aware of my medical condition. And, in fact, he's given me three surgeries on my knee, my lower back twice.[6] The condition is the same. He stated that the administration is going through that process, and that I got caught in the mix of it. So at this point, he has no other choice but to state "unrestricted."

(Parnell Depo at 11:6-17.)

> Q. The first time you saw Dr. Win following your move to an upper tier cell was that month, correct - - September of 2015?
>
> A. It - - yeah - - or August sometime. It was a process for me getting to him. I put in several complaints - - several complaints. He finally did see me within 30 days or so, I do believe. And that's when he expressed to me that it's out of his hands as far as continue housing me lower tier, lower bunk. The administration weeding out undeserving chronos, and he stated that that's what's going on. So he - - it wasn't anything he could do about that. So our argument is that, "You're my doctor. You know my condition, and you allow this to go forward. And what I'm going through traveling up and down the stairs and trying to get up on the top bunk, it's real difficult." So he continued and continued with the restrictions, and so they just moved me around from this building to that building and things of that nature.

(Parnell Depo at 15:8-16:1.)

> Q. In your Complaint, you said - - information believed that you thought that your lower tier bunk chrono was denied because of institutional stress. Can you elaborate on that?
>
> A. Dr. Win expressed to me - - he said, "Parnell, right now, the institution is weeding out all the undeserved lower tier bunks." Our argument back and forth was: He's my provider. My care - - my PCP provider, and that, you know my condition. And he stated, "It's degenerative. It's getting worse not better." To the point where we went back and forth with that. He provided more treatment, I believe, and we started from there.

---

[6] Plaintiff's references to "surgery" or "surgeries" in this regard refer to cortisone injections. (ECF No. 28-4 at 12 ["Kenalog injections"].)

(Parnell Depo at 32:12-23.)  As shown above, on each occasion plaintiff testified Dr. Win advised him that CDCR was "weeding out" inmates "undeserving" of a lower bunk/lower tier chrono assignment.  Contrary then to plaintiff's pleading characterizing Dr. Win as having referenced a new system designed to "'weed out' permanent chronos," plaintiff's own deposition testimony references only those chronos awarded to "undeserving" recipients rather than all prior recipients.  To that end, the evidence proffered by defendants shows plaintiff was an undeserving recipient under the updated criteria.

The undersigned recognizes the court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  See Anderson, 477 U.S. at 249, 255; Matsushita, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  Am. Int'l Grp., Inc. v. Am. Int'l Bank, 926 F.2d 829, 837 (9th Cir. 1991) (Kozinski, J., dissenting) (citing Celotex, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).  On the contrary, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.  Here, plaintiff has done nothing more than offer "some metaphysical doubt" that Dr. Win's actions create a genuine issue of material fact by alleging some conspiracy based upon "institutional stress."  Plaintiff's inference is merely drawn out of "thin air" and is not based upon evidence of a factual predicate.

Further, to the extent plaintiff is attempting to use Dr. Win's alleged statements as proof that plaintiff's requests for a lower bunk/lower tier chrono were denied as a result of "institutional stress" amounting to deliberate indifference, the substance of plaintiff's testimony in this regard is hearsay and cannot properly be considered in opposition to a summary judgment motion.  See Jones v. Williams, 791 F.3d 1023, 1032 (9th Cir. 2015) (citing Fed. R. Evid. 801(c)); Block v.

<u>City of Los Angeles</u>, 253 F.3d 410, 419 (9th Cir. 2001) (holding that it was an abuse of discretion for the district court, at the summary judgment stage, to consider information from an affidavit based on inadmissible hearsay rather than the affiant's personal knowledge). Inadmissible hearsay cannot be considered on motion for summary judgment. <u>See</u>, <u>e.g.</u>, <u>Courtney v. Canyon Television & Appliance Rental, Inc.</u>, 899 F.2d 845, 851 (9th Cir. 1990) ("Courtney's only evidence that these statements were in fact made consisted of his own assertions to that effect. These assertions are not included within any exception to the hearsay rule, and therefore are inadmissible at summary judgment"). Plaintiff has no personal knowledge regarding CDCR's "e-system" for reviewing lower bunk/lower tier assignments or reason for its implementation along with the revised criteria. Plaintiff's deposition testimony regarding statements allegedly made by Dr. Win on this issue is inadmissible for purposes of summary judgment.

Defendants contend there are no disputed facts concerning defendant Chen and that plaintiff has not provided "argument as to why summary judgment should not be granted in Dr. Chen's favor." (ECF No. 30 at 4.)

Plaintiff's complaint asserts Dr. Chen failed to issue a lower tier/lower bunk chrono following plaintiff's fall on April 20, 2016, and further contends that Dr. Chen "canceled the code 3 medical response and failed to provide a modicum of professional medical services." (ECF No. 1 at 10.) Plaintiff claims he "suffered more aggravation to his already serious painful and debilitating medical condition" as a result. (ECF No. 1 at 10.) Plaintiff argues Dr. Chen acted in the "furtherance of the administration's bureaucratic imperative" and in so doing acted with deliberate indifference to plaintiff's medical needs. (ECF No. 1 at 10-11.)

In his declaration, Dr. Chen, board certified in internal medicine, states in part: "I did not cancel a code 3 medical response. I have no knowledge of a code 3 being called, and do not believe that a code 3 was ever called with respect to Plaintiff on April 20, 2016." (ECF No. 28-5 at 2, ¶ 6.) The medical records appended to Dr. Chen's declaration make no reference to any coded medical response.[7] (ECF No. 28-5 at 4-10.) Plaintiff has offered no evidence, other than

---

[7] The undersigned notes the medical record indicates plaintiff denied any loss of consciousness at the time of the incident. (<u>See</u> ECF No. 28-5 at 6 ["Denied L.O.C."].) In his complaint, plaintiff

his own self-serving statement in the complaint, to indicate any coded response was initiated, nor has he offered an affidavit or other admissible discovery material to dispute that offered by defendants.

In his declaration, Dr. Chen also states he examined plaintiff. Plaintiff was complaining of neck pain and pain to the left side of his head, and wanted to see a pain specialist. (ECF No. 28-5 at ¶ 5.) There were no signs of trauma and examination results were normal, and there was no indication plaintiff needed to see a pain specialist. Plaintiff was treated with Tramadol and ice, and Dr. Chen ordered x-rays of plaintiff's cervical spine be taken. (ECF No. 28-5 at 2, ¶ 7.) More specifically, in pertinent part, the medical record indicates Dr. Chen's examination revealed no swelling, abrasions or bruising of the head or extremities, and plaintiff had full range of motion in his arms. The interdisciplinary progress notes reveal that plaintiff "refused to cooperate for exam." Dr. Chen noted his examination of plaintiff did not indicate a need for a chronic pain specialist; the doctor advised plaintiff to follow up with his primary care physician. (ECF No. 28-5 at 6.) Dr. Chen's order of that same date calls for "Xray Cervical spine AP and Lat stat." (ECF No. 28-5 at 8.) X-rays were obtained minutes later,[8] revealing no evidence of fracture or dislocation, no evidence of retropharyngeal soft tissue swelling, an intact odontoid, and spinous processes/lateral masses within normal limits. Moderate degenerative disc changes were present at C5-6 and C6-7. (ECF No. 28-5 at 9.) Given the above, there is no evidence that Dr. Chen "failed to provide a modicum of professional medical services" as alleged by plaintiff, or that he acted with any deliberate indifference. Plaintiff has not offered any evidence whatsoever to contradict that offered by defendants. Estelle, 429 U.S. at 105-06; Toguchi, 391 F.3d at 1059.

The undersigned finds there is no genuine issue of material dispute with regard to the care provided to plaintiff by Dr. Chen. Defendants have met their burden on summary judgment; however, plaintiff has failed his burden as the nonmoving party. Plaintiff's complaint and

---

asserted the fall "rendered him for a while unconscious." (ECF No. 1 at 10, ¶ 23.)

[8] Dr. Chen's order is time stamped 12:33 p.m. X-rays were taken at 12:37 p.m. (ECF No. 28-5 at 8-9.)

pleadings are insufficient; he did not tender evidence in the form of affidavits or other admissible discovery in support of his assertions.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11.  There exists a complete failure of proof as to plaintiff's case against Dr. Chen.  Celotex Corp., 477 U.S. at 323.

Finally, plaintiff's various requests for accommodation following the rescission of a lower tier/lower bunk chrono in June 2015 make little or no mention of restrictions related to lifting or cuffing.[9]  The record establishes that plaintiff was seeking a housing accommodation rather than those pertaining to physical limitations/restrictions.  (See, e.g., ECF No. 28-4 at 15 ["here to request lower bunk/lower tier"], 16, 19 ["need to see doctor to request back my LB/LT status"], 22 ["low bunk would help"], 24 ["'I really need low bunk'"], 25 ["today he wants lower bunk and cane to be reinstated"], 27-28, 45 [main concern is lower bunk].)  Moreover, an accommodation related to cuffing and lifting was issued by Dr. Win on September 14, 2015, and was marked permanent, i.e., good for one year or until September 2016.  (ECF No. 28-4 at 10, 14.)  Temporary chronos called for similar physical restrictions within that time period.  (ECF No. 28-4 at 51, 54, 55, 59.)  No mention is made, nor request present, in the record provided pertaining to lifting or cuffing between the expected expiration of those restrictions in mid-September 2016 and the November 28, 2016, permanent order for a lower tier/lower bunk housing assignment.  There is but one mention of the ADA, to wit: during a doctor visit on May 26, 2016, plaintiff told

---

[9] A lifting restriction is limited to the following conditions: post operation ocular surgery (2 months); post operation spinal surgery (6 months); post operation upper extremity injury (shoulder, elbow, wrist); significant upper extremity injury (shoulder elbow wrist); major abdominal or thoracic surgery; severe neuropathic pain exacerbated by lifting; bone disease of spine; ataxia/neurological impairment/Parkinson; amputation or severe weakness of upper or lower extremity; severe arthritis of knee, ankle, hips, shoulder (joints).  (ECF No. 28-4 at 84.)

A cuffing restriction is limited to the following conditions: post operation upper extremity surgery in past 6 months (shoulder, elbow, wrist); amputation of the hand or arm; amputation or severe weakness of upper extremity; upper extremity prosthesis; severe arthritis-rheumatoid; torn rotator cuff; acute fracture of upper extremity, long bones only; moderate to severe adhesive capsulitis; grade IV shoulder separation; balance issues/cerebral palsy/multiple sclerosis; pregnancy; contracture of upper extremities; actively healing burns or wounds in wrists, open abscess; frequent dislocations; active infection (like cocci); use of walker, crutches or cane. (ECF No. 28-4 at 81.)

Dr. Win he "wants ADA status." (ECF No. 28-4 at 57.) It is plain that plaintiff's claim, both as presented in his complaint and present in the record, relates to his requests for lower tier/lower bunk accommodations.

Indifference to an inmate's medical needs must be substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment between medical personnel or between the inmate and medical personnel does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 105-06; Toguchi, 391 F.3d at 1057. As evidenced by the record and the uncontradicted evidence offered by defendants, neither Dr. Win nor Dr. Chen acted with deliberate indifference by denying plaintiff a lower tier/lower bunk accommodation.

Plaintiff was provided adequate treatment for his knee, shoulder and back pain. In sum, plaintiff has not met his burden on summary judgment to establish there exist genuine issues of material dispute requiring determination by a judge or jury. Plaintiff provides no factual evidence, exhibits or admissible affidavits to defeat defendants' showing that they did not fail to protect him from harm in violation of his Eighth Amendment rights. This record as a whole does not lead a rational trier of fact to find for plaintiff. Matsushita, 475 U.S. at 586. Thus, the undersigned recommends summary judgment be granted.

VII. Qualified Immunity

The undersigned finds that plaintiff has not established an Eighth Amendment violation, and therefore need not address the issue of qualified immunity.

VIII. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion to appoint counsel (ECF No. 35) is denied; and

2.  Defendants' motion to strike (ECF No. 37) is denied as moot; and

IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment (ECF No. 28) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 6, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/parn0220.msj.med